Okay, very well. Mr. Franklin, do you want to reserve any time out of your ten minutes for rebuttal? Three minutes, Your Honor, please. Very well. We'll try to help you, but keep your eye on the clock, if you will. Will do. Please proceed. Good morning, Your Honors. Stephen Bruni, Petitioner, comes before you asking that this matter be remanded back to the State Court for a new trial as a result of the violation of its Fifth and Fourteenth Amendment rights. Petitioner is proceeding under the AEDPA Section 2254 D.2, which are mixed questions of law and fact. I know you know the facts. I'm going to cut to the chase. Mr. Bruni, his second confession as a result of a confrontation call was allowed in at trial. Petitioner believes that under Fulamonte and Schneckloff that the totality of the circumstances were not looked at by the trial court judge in regard to the voluntariness of that second confession that was so close in time for the first beating that he had that resulted in the first confession that was suppressed. Looking at the entire picture, it was approximately five weeks later that the confrontation call at the direction of law enforcement here by his brother, the individual that did the same beating on him, affected Mr. Bruni's statements over the telephone and went along with his brother as to what he allegedly had done or what his brother had accused him of. Again, looking at the totality of the circumstances and the fact also that Mr. Bruni, the petitioner here, lived approximately two miles from his brother and that his brother was an ex-con, also an ex-marine, that fear was still in the back of his mind. Coercion has been defined. But he concluded that your client's will was not overborne and that any negative was far outweighed by the positive in terms of what the state was presenting. How do you how can you be successful in that setting where the trial judge was as careful as he was? I didn't catch that last part, Your Honor. How can you be successful under AEDPA when the trial judge did what he did? We believe, Your Honor, that there was an unreasonable determination of the facts and that an incorrect analysis was done prior to the judge making his ruling. But with respect, again, we're governed by AEDPA. We can't interpose what we would have done or how we would have ruled. We have to look at what the trial judge did and determine whether it was an unreasonable, if you will in this case, weighing of the facts. What would you point to that most clearly shows that this was an unreasonable weighing of the facts, given the fact that we're operating under AEDPA? Your Honor, I don't believe that enough weight was given to petitioner's statements relative to the first beating and what was going through his mind during the confrontation call. He still had, he had testified, he still had a fear of his brother. And that would be considered coercion at his mental, what his mental state was at the time, Your Honor, which resulted in his statements so that his brother did not come back and beat on him again. I have the same concern my colleague does. This is a factual issue. You have a trial judge determining the facts. What you're asking us to do is say that we can do a better job just not seeing, not determining the facts, not hearing the evidence. How do you say that this judge was clearly erroneous in a factual determination? Well, there was an unreasonable determination of the facts that caused the conclusion to be made to allow that statement from the confrontation call to come in. There was not an in-depth analysis of his testimony. If the trial judge says, I didn't believe him, that's all the judge has to do. He's just there to determine facts. Now you have to show that that was clearly erroneous. And what is there that's specific in this case that we would overturn that factual determination? I don't believe the record reflects that he ever indicated that Petitioner wasn't believed during his testimony. During his testimony. But he wrote an opinion that didn't. Well, he never discounted Petitioner's subjective fear, which would play into this relative to his state of mind and going along with his brother now a second time to avoid getting beat again. You're assuming that he had that in his mind. The district judge was determining a fact. How can we say the district judge, the trial judge, was clearly erroneous on a factual determination based on this record? What is there specifically that we'd overrule a factual determination? Because the judge never got into it, Your Honor. He never dove deep enough into my client's state of mind, and he discounted my client's testimony and didn't go further into an analysis, at least based upon the record and his evidentiary ruling. What more was he required to do, though? You're saying that on every aspect of your client's testimony, the judge was required to say, well, he said this, and this is the way I look at it, and this is the way I ultimately come out. Is that what he's required to do under your analysis? Well, I think it was minimal, Your Honor. That's my opinion in regard to how far he did go. And I'm not saying that he should have gone as far as you've indicated, but, again, I don't believe he went far enough under the standard on full amante relative to the totality of the circumstances, taking into consideration the things that I brought up about five minutes ago. You want to save the balance of your time for rebuttal? I think you said you wanted three minutes. Yes, sir, please. Very well. Okay. Let's hear, then, from Ms. Shaw. She's with us in person. These days, you never know who's going to be where, so we're delighted to have somebody here in person. Please proceed. Good morning, Your Honors, and may it please the Court. My name is Vineet Mehta-Shaw, and I am representing the appellees in this matter on behalf of the State of Arizona. Your Honor, so I wanted to touch on a couple of points that opposing counsel made, as well as the Court's questions. So, the main issue, obviously, is whether the fear, the alleged fear that the defendant had, and if you don't mind, I'll just call him the defendant as we're relating to the trial court, that the fear that he had at the time of the confrontation call, the only evidence of that is really his self-serving testimony. That alleged fear is not apparent in the confrontation call recording. If you, Your Honors, listen to the recording, it's the tone of the call, the tone of the conversation, the length of the conversation. It was over 17 minutes. The substance of the conversation, it wasn't a phone call or a confrontation call where it started, and the question was asked, and a confession was made, and then it ended abruptly. It was a loving, brotherly conversation. That's an interesting way to characterize that conversation. That's a good point. Okay, so maybe not loving, but it was not a contentious, argumentative conversation. Also, one point to note that's very important is that the defendant, Mr. Bruni, the appellant, called his brother, Jeff, back on this date. On October 14th, there had been a phone call initiated by Jeff, and the detective was sitting there about an hour prior to this call, the actual call recording we have. I believe at that time, Mr. Bruni said that he was going into an appointment and that he would call his brother back. He did call back, and they had a long conversation. He didn't have to. They weren't in any sort of proximate distance to each other. They were on the phone. So is your point, because what you're calling the defendant, in effect, initiated the call that got recorded, that was an evidence that he had very little fear? If he was really afraid, why would he have initiated the call in the first place? Is that your point? Yes, Your Honor. Yes, and to further that point was that it shows that he didn't have much fear because he knew that nothing would happen. It wasn't that he thought that his brother was going to come beat him up immediately if he didn't call back. And there's evidence of that because there was testimony during the suppression hearing that about a week or so before a call was initiated, where I believe the appellant didn't answer and nothing happened. There was no other communication for that week or so in between, and Jeff didn't come and beat him up in the meantime. Let me ask you this. You heard opposing counsel suggest that when you look at the totality of the evidence that we need to send this back, what's your response to that? I mean, you know what the trial judge did. What more, from your perspective, did the trial judge need to do in order to satisfy the requirements of AEDPA? Well, quite frankly, I don't think that the trial judge needed to do anything more. The trial judge really did write a thoughtful, reasoned decision, did address the various factors. I believe that the trial judge, in reading the entire under advisement ruling, you can see that the trial judge was thoughtful and did lend credibility to, or did find credibility in some of the defendant's testimony. Maybe not all, but that implicitly shows that the trial judge just didn't find those portions of the testimony credible. So, counsel, can you help me out to make sure I have the procedural history right? So the first trial ended in a mistrial, correct? A mistrial, yes, Your Honor. It was a sua sponte issue for mistrial because at that time the trial judge had, they had seated a jury and there was a discovery issue where- Well, the magistrate judge said the state had not disclosed evidence. Is that right? Well, that's not quite accurate. So what had happened was that documents were submitted to the trial court for in-camera review, and the trial court had determined that they did not need to be disclosed to the defense. So, but then later, after the jury was seated, the court over the weekend had reviewed everything and realized that it had made an error, and then there, on Monday morning, just sua sponte found it for a mistrial. Okay, so the first trial- Because a disclosure did need to be made. Sorry. So the first trial ended in a mistrial. The second trial hung jury. Yes, Your Honor. And the third trial, you charged four counts, and the only one he was convicted of was the one he confessed to over the phone, correct? I'm not sure that that's quite accurate because the- Well, that's what the magistrate judge said. We don't have the state court record in front of us, so that's why I'm asking the question. Absolutely, Your Honor. Was the magistrate judge wrong in that? Yes, Your Honor. So the counts that were charged in the indictment covered the same date range, and while they may have-the indictment may have charged each individual action or contact separately, I think that the conviction is for the actions that occurred during that time, whether it was one contact or not. I believe the jury just thought, well, okay, this happened at this time, and that's what they found him guilty of. Okay. So can you tell me briefly, aside from the confession, I assume the victim testified, right? Your Honor, yes. So the victim- Okay, and so what other evidence was presented to the jury at the second trial other than the confession and the victim's testimony? The defendant-the appellant who was the defendant at the time testified on his own behalf during that trial. The victim, as we mentioned, testified at that trial. He was 12 years old at the time of the trial. There was testimony not only from the brother, Jeff, which is the victim's father and the detective, as well as from Wendy Denton, who is like a clinical psychologist, I believe. And then there was, of course, the confrontation call. I think medical records may have been entered as it relates to the defendant's injuries, maybe. Okay. But for sure that was at the suppression hearing. Yeah, that and that is my question. Okay. Yes, were there any other questions? It's up to you. Okay. So as I mentioned, I think that there is an implicit rejection of the appellant's testimony during the suppression hearing when you read through the under advisement ruling. And so as the court mentioned before, this trial court did make a reasonable determination of facts, and that decision is owed deference under AEDPA. The appellant has not met their burden in showing that it's not owed deference. Counsel, if I understand his position correctly, your opposing counsel suggests that the trial court failed to consider each of the points that had been raised by the defense. In your view, is the trial court, was the trial court obligated to consider each one and expressly address those? No, Your Honor. Not under case law and not under AEDPA. But I will say, though, I do believe that although I think the court did address those points but may not have explicitly said, I don't believe the defendant when he testified about his fear or his injuries, but it is implicit there. But I don't think that there's any requirement to specifically say, list out every single thing that the defendant says and then say whether you find that credible or not. So is it a fair interpretation of what you're saying that even if the court did not specifically address it, the court's view was implicit based upon what the court wrote, and in any event, it was not unreasonable for the court to fail to mention it. Is that your view? Yes, absolutely. Okay. And so one point I just want to make, if in the event that this court does get to, you know, the question of error and harmlessness under Brecht, one note is that there was a jury instruction that was given as to voluntariness, and the jury instruction is under the ROGGIES. I believe it's ROGGIES 19, and it is about the defendant's statement to law enforcement and that the jurors must decide whether it was a voluntary statement. And so in that, that renders this whole argument moot in terms of whether there was actual prejudice, which I will say that the appellant has not proven or shown that there was actual prejudice. And this is not, there's just, this case does fall under EDPA and is owed deference. Okay. Your time is up, but let me ask my colleague whether either has additional questions for the State. Nothing further. Very well. Okay. Thank you. Thank you very much. May I just give you one last line to close? If it has to do with the weather, yes. If the case, no. Okay. Thank you. Thank you. Very well. Let's hear a rebuttal from counsel for Mr. Bruni. Your Honor, I'd like to work from most recent backwards. The State indicated that Mr. Bruni hasn't shown actual prejudice, but the fact that there were three trials, and that he was charged with four separate counts over a time period, which is correct, and the jury only found him guilty on the count of dealing with the confession from the confrontation call. I think that clearly shows that that was prejudicial and going back. Well, wait a minute. Counsel, you heard my colleague, Judge Thomas, ask the government what else was put on. And as you heard, and as you know, in addition to the confession, you had the victim, the brother, a psychologist, your own client. There's a lot that went into it. It wasn't just the confession. So you can't hang everything on the one that was tied to the confession, can you? Well, I'm tying it to the one count he was found guilty on since the other three counts he was found not guilty on, and the confession only dealt with the one time involving the count that he was found guilty on. I think that speaks for itself, Your Honor. In what way? Judge Thomas, did I interrupt you? I'm sorry. I had a separate question. Okay, go ahead, Judge Thomas, please. Now, the question I had, you heard the argument that there was a voluntariness instruction. And again, we don't have the state transcript in front of us. So can you tell me whether or not all of the beatings and all this came into evidence in the state court trial, the second one? It did not. The beating did not because the confession from the beating was not allowed in. Okay. So the jury did not know that the brother had beaten your client prior to the call? That's correct. And now that you brought that up, that may have actually been significant in regard to the voluntariness instruction that was given to the jury because they would have looked at, again, the totality of the circumstances and looked at the broader picture. A, this guy got beat once. Maybe it's carrying over to the confrontation call, which was, again, five weeks later. And if you look at the decision of Fulamonte and the facts, I think, and it's Petitioner's position, that the facts here are more egregious than the facts in Fulamonte. And that confession was suppressed. Nothing further, Your Honors. Okay. Do either of my colleagues have additional questions? None. Very well. All right. No. No. We thank both counsel for their arguments. The case just argued is submitted, Rooney v. Shin.
judges: WALLACE, THOMAS, SMITH